Johns, Chancellor:

The preceding statement of the case, exhibited on the record certified and sent up, presents the questions which require our consideration and decision.
The first and most important is that of jurisdiction. For the purpose of ascertaining correctly whether the Superior Court had authority to award the writ of peremptory mandamus, it is necessary to examine and understand the character of the injury complained of by the petitioner, and the remedy which he has sought to obtain. If no legal right has been violated, there can be no application of a legal remedy. The writ of .mandamus is a legal remedy for a legal right. The petitioner states the injury to be the refusal of the trustees of the Union Church of Africans in Wilmington to admit him to preach in the said church whenever he may see proper so to do, and to administer the ordinances and discipline thereof, and to exercise a pastoral charge over the same, and asks the aid of the secular Court by writ of mandamus. The party thus seeking the interposition of the civil power derives his office of elder minister, and his authority to discharge its functions, exclusively from the Methodist Church, and alleges that, according to the discipline and usages of said church, it is *124 his. duty and right to preach in the said Union Church in Wilmington whenever he may see proper so to do, and to administer the ordinances thereof, and to exercise a pastoral charge over the same. The right to the office and its functions are both .expressly stated to he derived from ecclesiastical authority, and cannot, under any aspect, he viewed as temporal rights. The petition does not state the loss of any temporal right, or allege any loss of property consequential upon his being refused to admission to preach in said church, or exercise the said spiritual functions.
It does not appear, from any allegation contained in the petition, that any temporal legal right has been infringed, or that the .petitioner has been deprived of any ecclesiastical or temporal office. The only matter of complaint is, that one of the religious societies, over which his ecclesiastical authority, derived from the Conference, existed, refused submission to its exercise. His office and functions over all the other societies remains unaffected; and no doubt the pecuniary compensation, derived from a common fund and incident to the office, remains unimpaired, for no loss or diminution is set forth. The present case, therefore, is only an application for admission to the exercise and discharge of ecclesiastical rights and duties in a particular church, exclusive of any and all temporal emoluments. ■ It can only be regarded as asking the aid of a secular Court to enforce obedience to the authority of the Conference, a body exercising ecclesiastical and not a temporal power. If, then, I am correct in the view taken of the case made in the petition, the Superior Court has no jurisdiction, and erred in awarding the writ of mandamus.
But if has been supposed that the act of incorporation, in connection with the second section of the articles of association, sustains the jurisdiction of the Court, and authorized the awarding of the writ. The answer to this is, that the petition, reciting and relying on the second section of the articles of association, made the whole thereof a part of the case, and rendered it incumbent on the Court *125 to consider and respect all the sections. The return to the alternative mandamus sets forth and relies upon the sixth article, which excludes all ministers from admission to preach in the said “Union Church,” unless with the assent of the trustees and a majority of the corporation; and further avers, that no such consent was given, but refused.
The Superior Court, in awarding the writ of peremptory mandamus, were probably influenced by the English decisions, but, after a full and thorough examination of them, I have not been able to discover-a single instance in which relief was granted, unless some legal or temporal right was involved in the case. It is unnecessary here to review them; but it may be useful to advert to an important distinction, which cannot be disregarded when our attention is directed to such precedents. I allude to the judicial jurisdiction in Governments having an established church, whether constitutionally as a part of the organic law, or tolerated by law: in such it may be proper to regard the person entitled to .the office as having, a legal right; for, although conferred ecclesiastically, it is held under and by virtue of constitutional or legal authority. In England the Episcopal Church is a constituent part of the constitution, and has fa legal existence. The ecclesiastical officers hold and are legally seized of the temporalities of the church, and need no act of incorporation for such purpose. The rector being legally entitled to the church and glebe, when deprived or dispossessed may be restored by a writ of mandamus, which is a legal remedy for a legal right. The same jurisdiction has been exercised under the Toleration Acts, by analogy, in favor of dissenting churches having an endowment by deed, through the intervention of trustees : when the ecclesiastical office entitled the occupant or holder of the office discharging the services and duties thereof to temporal emoluments, for the purpose of protecting the temporal rights incident to the office, the secular courts granted the writ of mandamus. The decision in the case of Rex v. Barker, 3 Bur. Rep. 1265, sustains the view I have taken, as appears from the remarks of Mr. *126 Justice Foster: “Here is a legal right. Their ministers are tolerated and allowed; their right is established as a legal right, and as much as any other legal rights.”
In all countries where the church is established by law, it may be consistent with public policy that it should be subject to civil jurisdiction; for, when the law establishes or tolerates, a state of dependence is the legitimate consequence. In Scotland we lately had an illustration of the operation of this principle in their system of an Established Church. I refer to the celebrated Shathbogre case, which resulted in the formation of the Free Church of Scotland; adopting as its basis the voluntary principle, for the express purpose of being emancipated from the control of secular courts, derived from precedents consequent upon the connection of Church and State.
But under our Constitution, which declares “that no power shall or ought to be vested in or assumed by any magistrate, that shall in any case interfere with, or in any manner control, the fights of conscience in tjie free exercise of religious worship,” it would seem a reasonable conclusion that all ecclesiastical offices and their functions must necessarily be excluded from the jurisdiction of the secular courts.
Regarding the whole ecclesiastical system, under our Constitution, as based upon the voluntary principle, it can have neither legal capacity nor existence, and therefore incapable, sui juris, of having legal rights or temporal property ; hence the necessity of obtaining acts of incorporation to create a corporate body, or constituting by deed trustees for the purpose of acquiring and holding property for the use and benefit of churches; but the church, in its ecclesiastical order of functions and discipline, remains intact, and free from the civil and secular jurisdiction.
It appears that, in 4 Harris and McHenry’s Reports, 448, there is a case in which the secular court exercised jurisdiction, on the ground that the church was endowed, but decreed that emoluments which depend on voluntary contribution are not sufficient to warrant the court in issu *127 ing a mandamus. In 1 Term Rep. 133, Lectureship not endowed, mandamus refused.
Instances have occurred in this country in which the trustees of Roman Catholic churches have refused to admit priests, although appointed and authorized by a Roman Catholic bishop, as was the case in the Church of St. Louis, at Buffalo, and St. Mary’s Church in Philadelphia, and yet recourse was not had to the civil authority; nor, as far as I am informed, was any attempt made to enforce the ecclesiastical authority by the writ of mandamus. That church, which in other countries has so long used the coercive action of secular courts, well knew that here it would be fruitless and unavailing. To obviate the embarrassment experienced from lay trustees, recourse was had to the legislative power; and in several of the States application was made for such acts of incorporation as would vest the temporalities of the church in the bishop, and thereby create an ecclesiastical corporation solely, having succession independent of the laity. Such was the mode of relief sought by the Roman Church in our State, which was defeated by the passage of a resolution declaring them entitled (as they always have been) to the same rights and privileges as all other religious denominations.
Prom the consideration I have given the subject, it appears to me that the petitioner failed to bring his case within the jurisdiction of the Superior Court. Being of that opinion, it renders it unnecessary for me to advert to the other questions involved; therefore I conclude, 'the judgment of the Superior Court, ordering the peremptory mandamus, ought to be reversed and declared to be of no effect.